**In re the MARRIAGE OF David Lee SMITH and Elizabeth Smith.**

**Upon the Petition of**

**David Lee Smith, Appellant,**

**And Concerning**

**Elizabeth Smith, Appellee.**

No. 96–442.

Supreme Court of Iowa.

Feb. 18, 1998.

Patti J. Westerbeck of Leitner Law Office, Johnston, for appellant.

Lee M. Walker of Walker, Knopf & Billingsley, Newton, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

Appellant David Smith challenges the basis, size, and duration of his obligation to pay spousal support upon the dissolution of his marriage. Because we believe the court's allowances for alimony and property division

were equitable under the circumstances, we affirm.

David and Elizabeth Smith married in November 1991. Both parties had been married before, and each had two children from those marriages. Residing with the Smiths during their marriage were Elizabeth's children, Erin (born in 1983), and Kristen (born in 1986). The girls' natural father, Donald Goetz, resided in Texas. He maintained no contact with the girls, other than sending a monthly child support check.

In March 1993 Elizabeth petitioned to terminate Goetz's parental rights on the ground of abandonment. Believing a stepparent adoption was in the works, the district court routinely terminated the natural father's rights. David, who had initially questioned the termination, subsequently concurred in a plan to adopt the children. He signed the necessary papers to begin the process and, in fact, assumed the adoption had been finalized. The adoption, however, was never concluded.

Upon David's petition in 1995, the parties' marriage was dissolved. David, then age thirty-seven, was employed as a tool and die maker earning roughly $45,000 per year. Elizabeth, who had not worked outside the home during the marriage, had recently obtained a minimum wage job as a telemarketer. The district court divided the parties' limited real and personal property. It then addressed the financial dilemma created by the parties' failure to finalize the adoption of the girls.

The court recognized that David had no legal obligation to support Erin and Kristen. It was nevertheless mindful that Elizabeth had neither the training nor employment experience to subsist, as a single parent, above the poverty level. David, on the other hand, had a two-year college degree and a stable job. The court therefore ordered David to pay "transitional" alimony of $300 per month for a period of three years. This appeal by David followed.

I. Our review is de novo. *In re Marriage of Benson,* 545 N.W.2d 252, 257 (Iowa 1996). "We are obliged to examine the entire record and adjudicate rights anew on the issues properly presented." *In re Marriage of Geil,* 509 N.W.2d 738, 740 (Iowa 1993). No hard and fast rules govern the economic provisions in a dissolution action; each decision turns on its own uniquely relevant facts. *In re Marriage of Gaer,* 476 N.W.2d 324, 326 (Iowa 1991); *In re Marriage of Wiedemann,* 402 N.W.2d 744, 747 (Iowa 1987). Thus we accord the trial court considerable latitude in resolving disputed claims and will disturb a ruling "only when there has been a failure to do equity." *Benson,* 545 N.W.2d at 257.

II. David contends no spousal support award was warranted here because Elizabeth, although out of the work force during the marriage, gained sufficient clerical skills in high school to enable her to become self-supporting. David moreover contests the court's description of the alimony award as "transitional." He claims the concept is unrecognized in Iowa law as well as unjustified by the record before us. We disagree on both counts.

Our court of appeals recently summarized various categories of alimony and the purposes they serve. It said:

Alimony is awarded to accomplish one or more of three general purposes. *Rehabilitative alimony* serves to support an economically dependent spouse through a limited period of education and retraining. Its objective is self-sufficiency. An award of *reimbursement alimony* is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other. *Traditional alimony* is payable for life or for so long as a dependent spouse is incapable of self-support. The amount of alimony awarded and its duration will differ according to the purpose it is designed to serve.

*In re Marriage of O'Rourke,* 547 N.W.2d 864, 866–67 (Iowa App.1996) (citations omitted).

David concedes that the district court's decision "center[ed] on Elizabeth's ability to become self-supporting." Self-sufficiency is the primary goal of rehabilitative alimony. *Id.; In re Marriage of Francis,* 442 N.W.2d 59, 64 (Iowa 1989). Although

the district court described its award as "transitional" rather than "rehabilitative," the terms have been used interchangeably. *See In re Marriage of Wertz*, 492 N.W.2d 711, 714 (Iowa App.1992) (upholding award of "transitional alimony assistance" for spouse to update teaching certificate); *In re Marriage of Russell*, 473 N.W.2d 244, 247 (Iowa App.1991) (affirming "transitional alimony awarded ... [for spouse to] prepare herself for future employment").[1]

Whether described as transitional or rehabilitative, the alimony awarded here reflects the disparity in the parties' relative needs and earning capacities upon the dissolution of their marriage. *See In re Marriage of Hitchcock*, 309 N.W.2d 432, 436–37 (Iowa 1981) ("When determining the appropriateness of alimony, the trial court must consider: (1) the earning capacity of each party, and (2) present standards of living and ability to pay balanced against relative needs of the other."); *accord In re Marriage of Gonzalez*, 561 N.W.2d 94, 99 (Iowa App.1997). Compared with David's abilities and needs, Elizabeth's limited educational background, lack of employment security and responsibility in taking over the marital home were not—without alimony—sufficient for her subsistence. The district court expressed the hope that, with some assistance, Elizabeth could refine her secretarial skills and eventually achieve a better job and financial security. We find the court's award of modest monthly support, terminable after three years, equitable under the circumstances.

■ David also claims the court's award is really child support improperly disguised as alimony. We are not so persuaded. The court methodically addressed the criteria justifying an award of spousal support under Iowa Code section 598.21(3) (1995), including length of the marriage, age and health of the parties, distribution of property, the parties' educational levels, earning capacity, ability to become self-supporting, tax consequences, financial agreements, and other relevant factors unique to the case. Elizabeth's singular responsibility for her children was clearly an "other factor" considered relevant by the court. *See* Iowa Code § 598.21(3)(j). Although David cannot be fully blamed for the children's fatherless state, fairness dictates that he share the financial impact wrought by the breakdown of the marriage.

Moreover, the court's award carries none of the indicia of child support. Its duration bears no relationship to the age of the children; the amount was not calculated by reference to child support guidelines. *See* Iowa Code § 598.21(4). We conclude the court's award fell within the discretion granted under section 598.21(3) and was not for an improper purpose.

■ Finally, David argues that in any event the alimony should terminate upon Elizabeth's remarriage or death. It has long been the rule that subsequent remarriage does not automatically terminate alimony but does shift the burden to the recipient to show *extraordinary circumstances* justifying its continuation. *In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985); *accord In re Marriage of Von Glan*, 525 N.W.2d 427, 429 (Iowa App.1994); *In re Marriage of Cooper*, 451 N.W.2d 507, 509 (Iowa App.1989). Given the rehabilitative nature of the award here, a provision requiring automatic termination upon remarriage would not be appropriate. *Cooper*, 451 N.W.2d at 509. And although the decree does not so state, termination of the alimony upon Elizabeth's death is presumed. *Francis*, 442 N.W.2d at 64. Thus

1. The two terms are also used interchangeably in the periodic literature. *See, e.g.,* Sheryl L. Scheible, *Bankruptcy and the Modification of Support: Fresh Start, Head Start, or False Start?*, 69 N.C. L.Rev. 577, 589 (1991) ("Most states prefer short-term, 'rehabilitative' or 'transitional' alimony over permanent periodic alimony whenever feasible, in theory, to encourage the formerly dependent spouse to become self-supporting."); Nora J. Lauerman, *A Step Toward Enhancing Equality, Choice, and Opportunity to Develop in Marriage and at Divorce*, 56 U. Cin. L.Rev. 493, 509 (1987) (transitional alimony aims at enabling newly divorced persons to secure career counseling, education, training and the like with a view toward becoming self-supporting); Sharon L. Corbitt, *Alimony/Maintenance Spousal Support Case*, 12 Fair $hare 6, 6 (1995) (discussing transitional alimony as accommodating "a need for an economic cushion to ease the transition into self-support").

no ground for modification of the court's award appears.

III.  Both parties' briefs contain a request for appellate attorney fees.  Clearly our resolution of the controversy in Elizabeth's favor militates against an award for David. We likewise deny Elizabeth's claim, based on the property distribution and alimony award we hereby affirm.  Costs of this appeal shall be paid by David.

**AFFIRMED.**