# IN THE COURT OF APPEALS OF IOWA

No. 17-0770
Filed November 7, 2018

IN RE THE MARRIAGE OF RICHARD WAYNE NAYLOR
AND ASHLEY MARIE NAYLOR

Upon the Petition of
**RICHARD WAYNE NAYLOR,**
        Petitioner-Appellee,

**And Concerning**
**ASHLEY MARIE NAYLOR,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Kellyann M.

Lekar, Judge.


        Appeal challenging the economic provisions of a decree of dissolution of

marriage. **AFFIRMED.**


        Barry S. Kaplan and C. Aron Vaughn of Kaplan & Frese, LLP, Marshalltown,

for appellant.

        Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC,

Cedar Falls, for appellee.


        Heard by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

Ashley Naylor pursues this appeal from the decree dissolving her marriage to Richard Naylor. On appeal, Ashley challenges the property distribution and spousal support award as inequitable.

The record reflects the following. The parties commenced their relationship in 2005 or early 2006. At the time the parties started dating, Richard was approximately forty-three years old and Ashley was approximately twenty-two years old. He was employed as an orthopedic surgeon at a local hospital, earning approximately $2 million per year. She was employed as a radiologic technologist at the same hospital, earning approximately $40,000 per year. He was married with two children, and she was single. Although Richard was married with children, Richard and Ashley began cohabiting in May 2006. They continued to reside together while Richard's divorce from his spouse was pending. Richard's divorce was final in November 2010. Ashley and Richard married in April 2011.

The parties entered the marriage with a disparity in assets. Richard brought significant assets into the marriage. He owned timeshare properties in Hawaii, Las Vegas, and Mexico. He owned two condo units in Panama City, Florida. One unit was rented out, while the other was used as a vacation home. He owned a home in Suffolk, Virginia. He owned four vehicles. He had a wine collection ranging between 100-150 bottles, a collection of artwork, substantial amounts of jewelry, several hundred-thousand dollars in precious metals, a retirement plan through his work, and his personal property. Ashley owned one vehicle at the time the parties began dating, but Richard paid the loan on the vehicle, gifted the vehicle to his

niece, and purchased Ashley a new vehicle. Ashley also owned her personal possessions.

The parties commingled their finances before and during the marriage. After the parties began dating, they opened joint bank accounts. They paid bills from the joint bank accounts. They had joint credit cards. They established retirement and investment accounts. They purchased life insurance policies. The aforementioned precious metals were purchased while the parties were dating but prior to their marriage. They owned real property together. As previously stated, the parties began living together in the spring of 2006. At that time, Richard had moved from the marital home into a duplex he purchased. Ashley moved into the duplex with Richard. After several years, Richard sold the duplex and purchased a home for himself and Ashley. They were not married at the time Richard purchased this home, and Richard held title to the home. Subsequently, the parties purchased land and built Ashley her "dream home." Richard estimated the parties spent approximately $1.6 million to build the home. Given the local real estate market and the customization of the home to the parties' taste (for example, the home contains a wine cellar capable of storing 1700 bottles of wine), the fair market value of the home is substantially less than the cost of the home and the mortgages on the home.

During the course of the marriage, the parties lived, in their own words, an "opulent" lifestyle. This lifestyle was financed by Richard's significant income. Richard's income declined over the course of the marriage from approximately $2 million per year to approximately $1.5 million per year. He testified he worked less to spend more time with Ashley. He also testified he spent more time doing

administrative work and less time performing surgery. This was because Richard was transitioning into an administrative position in the hospital. After the parties married, Ashley ceased full-time employment with the hospital, but she continued to work as a PRN nurse (from the Latin "pro re nata," for an occasion that has arisen, as circumstances require, as needed). The parties agreed Ashley was largely responsible for managing the household while Richard worked fairly long hours.

Richard filed this petition for dissolution of marriage in May 2016. The contested issues at trial were property distribution and spousal support. In light of the disparity of income between the parties, the disparity in the value of premarital assets, and the short duration of the marriage, the district court concluded an equitable distribution of the parties' property did not require an equal division of the parties' property. The district court awarded Ashley some jewelry and other property but awarded the lion's share of the parties' property to Richard. The district court rejected Ashley's request for traditional or reimbursement support but did award Ashley rehabilitative support. The district court summarized its division of property and spousal support award as follows:

> The court determines that [Richard] should be restored to the extent possible to the majority of the property he brought into the marriage. Further, the court finds that the assets acquired by the parties during the course of the marriage should be subject to equitable, but not equal distribution. [Ashley] should receive those assets were which directly invested into her name. [Richard] should receive those assets which were directly invested in his name or which were acquired through his employment benefits for the purposes of retirement savings.
>
> [Ashley] should be afforded a fair amount of supposal [sic] support that will allow her to regain full-time employment or seek further education. She wishes to pursue that education on a part-

time basis and estimates it will take her four to four and a half years at an approximate cost of $5,000 per semester. The court believes that a period of four years should be sufficient to allow [Ashley] to advance her education and an additional year to regain a reasonable lifestyle that reflects her individual earning capacity and ability. [Ashley's] request . . . for spousal support that exceeds the actual length of the marriage is not reasonable. [Ashley] is entitled to reasonable spousal support and, as [Richard] has agreed to provide it, reasonable educational support.

Our review in a marriage action is de novo. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017); *accord In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015) (noting we give great latitude to the district court in fixing spousal support); *In re Marriage of Benson*, 545 N.W.2d 252, 257 (Iowa 1996) ("This deference to the trial court's determination is decidedly in the public interest. When appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at staggering expense to the parties wholly disproportionate to any benefit they might hope to realize."). As such, we will not modify a decree unless the district court failed to do equity. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).

We first address the property distribution. "Iowa is an equitable distribution state." *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007) (citing *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006)). Equitable distribution requires the division of "all of the property owned by the parties at the time of divorce except inherited property and gifts received by one spouse." *Id.* (citing *Sullins*, 715 N.W.2d at 247). An equitable distribution does "not require an equal division or percentage distribution." *In re Marriage of Campbell*, 623 N.W.2d 585,

586 (Iowa Ct. App. 2001) (citing *In re Marriage of Russel*, 473 N.W.2d 244, 246 (Iowa Ct. App. 1991)).  The relevant considerations are set forth in the Code:

> a.  The length of the marriage.
> b.  The property brought to the marriage by each party.
> c.  The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
> d.  The age and physical and emotional health of the parties.
> e.  The contribution by one party to the education, training, or increased earning power of the other.
> f.  The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, . . . , and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.
> . . . .
> h.  The amount and duration of an order granting support payments to either party pursuant to section 598.21A and whether the property division should be in lieu of such payments.
> i.  Other economic circumstances of each party, including pension benefits, vested or unvested.  Future interests may be considered . . . .
> j.  The tax consequences to each party.
> . . . .
> . . . .
> m.  Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21(5) (2016).

On de novo review, we conclude the district court's division of the property was equitable under the circumstances presented.  In the interest of brevity, rather than discussing each of the statutory factors and performing a line-item disposition of each contested asset, we choose to discuss several items of particular import.

First, this marriage lasted only six years.  In marriages of short duration, an equitable distribution of property does not require an equal distribution of property. *See In re Marriage of Peiffer*, No. 12-1746, 2013 WL 5498153, at *2 (Iowa Ct. App.

Oct. 2, 2013) (citing *Campbell*, 623 N.W.2d at 586). Instead, in marriages of short duration, our courts are inclined to restore the parties to the status quo ante or are inclined to at least trend toward the status quo ante. *See In re Marriage of Fluent*, No. 16-1321, 2017 WL 2461601, at *4 (Iowa Ct. App. June 7, 2017) ("We find the higher award to Grant is equitable in recognition that he did bring additional sums to the marriage, a union that was of relatively short duration."); *In re Marriage of Sinclair*, No. 13-1419, 2014 WL 4230215, at *4 (Iowa Ct. App. Aug 17, 2014) ("In this case, the distribution of assets is driven by the short duration of the marriage."); *In re Marriage of Hass*, 538 N.W.2d 889, 892 (Iowa Ct. App. 1995) ("If a marriage lasts only a short time, the claim of either party to the property owned by the other prior to the marriage or acquired by gift or inheritance during the brief duration of the marriage is minimal at best."). We reject Ashely's contention that the period of cohabitation prior to the marriage should be considered as part of the marriage for the purposes of dividing property. Notably, the statute does not identify premarital cohabitation as a relevant consideration. *See* Iowa Code § 598.21(5)(a)-(m).

Second, and interrelated, there was a significant disparity of assets brought into the marriage.

> If there were wide disparities between the assets of the parties at the time of the marriage, or if one of the parties were the recipient of a substantial gift or inheritance, the length of the marriage is a major factor in determining what the respective rights of the parties with respect to such property are at the time of its dissolution.

*In re Marriage of Wallace*, 315 N.W.2d 827, 830-31 (Iowa Ct. App. 1981). A more equal division of martial property is generally done where "the accumulated property is the product of the joint efforts of both spouses over a considerable

period." *In re Marriage of Arnold*, 133 N.W.2d 53, 60 (Iowa 1965). This is not the case here.

Third, the distribution of property is equitable when we consider the "contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services." Iowa Code § 598.21(5)(c). A just and equitable distribution of property must give regard to the efforts of the respective partners. *See Campbell*, 623 N.W.2d at 586. Here, Richard's income from his medical practice supported the parties' lifestyle. His income accounts for almost all of the parties' accumulation of assets. The record reflects his income ranged between $1.5-2.0 million per year during the marriage. Ashley ceased fulltime employment but continued to work as needed. Her income decreased to under $10,000 on an annual basis. It was undisputed that Ashley did not provide care for Richard's children. It was also undisputed that Ashley managed the household while Richard worked. We believe her non-economic contributions to the marriage are fairly reflected in the property distribution. *See In re Marriage of Lattig*, 318 N.W.2d 811, 815 (Iowa Ct. App. 1982) (stating the property distribution "should be a function of the tangible contributions of each party and not the mere existence of the marital relationship").

In sum, on de novo review, we cannot conclude the district court failed to do equity in distributing the parties' property. This was a marriage of short duration where the parties entered into the marriage with a significant disparity of assets. In dividing the property, the district court took those facts into consideration while giving Ashley significant credit for her non-economic contributions to the marriage. We affirm the judgment of the district court on this issue.

We next address the issue of spousal support. Here, the district court ordered Richard to pay $5000 monthly for a period of five years, plus additional payments for tuition for eight semesters, as rehabilitative spousal support. On appeal, Richard does not contest the spousal support award. Ashley contends the amount and duration of the award should be increased.

Spousal support is not an absolute right; an award depends upon the specific circumstances of each case. *Gust*, 858 N.W.2d at 408. Our cases recognize three primary forms of spousal support: traditional, rehabilitative, and reimbursement. *See id.*; *In re Marriage of Nelson*, No. 15-0492, 2016 WL 3269573, at *3 (Iowa Ct. App. June 15, 2016). Our cases also recognize a limited fourth category of spousal support—transitional support. *See, e.g.*, *In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *16 (Iowa Ct. App. Oct. 10, 2018) (McDonald, J., concurring specially) (recognizing transitional support as a form of spousal support); *In re Marriage of Lange*, No. 16-1484, 2017 WL 6033733, at *3 (Iowa Ct. App. Dec. 6, 2017) ("Jessica does not need traditional rehabilitative support so much as transitional support while finding suitable employment."). In determining the form, amount, and duration of spousal support, this court is guided by the following statutory factors:

> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to section 598.21.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, . . . and the time and expense necessary to acquire sufficient

education or training to enable the party to find appropriate employment.

    f.     The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

    g.     The tax consequences to each party.

    h.     Any mutual agreement by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

    . . . .

    j.     Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

Ashley contends traditional support is appropriate here because the parties' relationship, when including the premarital period, lasted almost twelve years. We disagree. Traditional support is typically warranted in long-term marriages where the earning potential of the parties may be reliably predicted. *See Gust*, 858 N.W.2d at 410. "[T]he shorter the marriage, the less likely a court is to award traditional spousal support." *Id.* Twenty years is the generally accepted durational threshold for the award of traditional spousal support. *See id.* at 410-11. The period of cohabitation prior to the marriage should not be considered for the purposes of awarding traditional spousal support. *See In re Marriage of Spiegel*, 553 N.W.2d 309, 320 (Iowa 1996) (rejecting argument that premarital relationship should be considered in awarding spousal support and stating, "[n]otably, section 598.21(3) does not include in its list of factors the premarital relationship of the parties"), *superseded by statute*. However, even if it were permissible to consider the premarital relationship, the length of the entire relationship falls far short of the durational threshold justifying an award of traditional support. *See In re Marriage of Stephens*, No. 13-0861, 2014 WL 69728, at *7 (Iowa Ct. App. Jan. 9, 2014)

(denying spousal support when "the marriage was of short duration"); *In re Marriage of Gonzalez*, 561 N.W.2d 94, 99 (Iowa Ct. App. 1997) (finding a five year marriage insufficient to necessitate traditional support). Traditional spousal support is not equitable in this case.

In support of her claim for additional spousal support, Ashley contends reimbursement support would be appropriate here. Again, we disagree. "Reimbursement spousal support allows the spouse receiving the support to share in the other spouse's future earnings in exchange for the receiving spouse's contributions to the source of that income." *In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008)*.* As a factual matter, there is no evidence Ashely contributed to the source of Richard's income. To the contrary, Richard was long established in his medical practice at the time the parties met. In addition, the record reflects his income actually decreased over the course of the marriage. As a legal matter, reimbursement support is inapplicable here. It applies only in "situations where the marriage is devoted almost entirely to the educational advancement of one spouse" and "there has not been enough time for the parties to receive the benefit from the educational advancement through tangible assets accumulated during the marriage." *In re Marriage of Erpelding*, No. 16-1419, 2017 WL 2670806, at *6 (Iowa Ct. App. June 21, 2017), *vacated on other grounds*, 917 N.W.2d 235, 247-48 (Iowa 2018). Reimbursement support is unavailable outside this narrow context. *See id.*; *see also In re Marriage of Probasco*, 676 N.W.2d 179, 185-86 (Iowa 2004) (holding reimbursement support inapplicable where wife provided support to build restaurant franchise business). We see no reason to deviate from

*Erpelding* and *Probasco*. An award of reimbursement support would not be equitable in this case.

We do agree with the district court that rehabilitation support is appropriate under the circumstances. "Rehabilitative spousal support is 'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'" *Becker*, 756 N.W.2d at 826 (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 63 (Iowa 1989)). "Self-sufficiency is the primary goal of rehabilitate [spousal support]." *In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998). "Because self-sufficiency is the goal of rehabilitative [spousal support], the duration of such an award may be limited or extended depending on the realistic needs of the economically dependent spouse, tempered by the goal of facilitating the economic independence of the ex-spouses." *Francis*, 442 N.W.2d at 64. Here, Ashley testified regarding her desire to continue her education and improve her earning capacity. The district court's support award allows Ashley to pursue these educational goals with a significant amount of financial support, including additional tuition support, over an extended period of time. This award was appropriate under the circumstances presented, including the significant distribution of property to Ashley. *See, e.g.*, *In re Marriage of Dillon*, No. 16-0415, 2016 WL 7393904, at *2 (Iowa Ct. App. Dec. 21, 2016) (finding an award of rehabilitative spousal support appropriate where the recipient "was just forty-one years old at the time of trial, was in good health, possessed a nursing degree from a four-year institution, and earned wages as a nurse for all but five years of the marriage.").

We affirm the district court's award of spousal support.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**