# IN THE COURT OF APPEALS OF IOWA

No. 20-1386
Filed September 22, 2021

**IN RE THE MARRIAGE OF CHERYL L. WILDE
AND JAMES F. WILDE**

**Upon the Petition of
CHERYL L. WILDE,**
        Petitioner-Appellant,

**And Concerning
JAMES F. WILDE,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Winnebago County, Rustin T. Davenport, Judge.

        A former spouse appeals from the property division of a decree dissolving the parties' marriage. **AFFIRMED.**

        Philip L. Garland, Garner, for appellant.

        Ronald D. Arispe, Clear Lake, for appellee.

        Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Following a marriage that lasted for nearly half a century, Cheryl Wilde appeals from the property division provisions of the decree dissolving her marriage to James Wilde. Cheryl argues the trial court erred in the division of the marital property on three grounds: (1) in failing to consider the appropriate economic contributions of each spouse, (2) in failing to consider James's dissipation of marital assets, and (3) in failing to consider James's ability to have only limited resources under Medicaid and Medicare provisions. On our de novo review, we affirm.

I.     **Scope and Standard of Review**

Because dissolution proceedings are equitable in nature, our review is de novo. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the fact-findings of the district court, particularly when considering the credibility of witnesses, but we are not bound by them. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We ordinarily will not disturb the district court's ruling unless it fails to do equity. *See In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998).

II.     **Relevant Background Facts**

Cheryl and James Wilde were married for forty-six years. The parties have a forty-three year old son who is married and lives independently from his parents. At the time of dissolution of the parties' marriage, Cheryl was sixty-seven years old and continued to reside at the parties' marital acreage. She is generally in good health. She receives Social Security benefits and union profit-sharing benefits

totaling $1664.13 per month. Cheryl's medical expenses are covered by Medicare and a supplemental health insurance policy.

James is seventy-one years old and was residing in a nursing home facility at the time of trial. While James's health had improved since admission to the nursing home, he suffers from dementia, depression, diabetes, and hypertension. When discharged from the nursing home, he anticipates residing in an assisted living facility or an apartment. He receives Medicare and Medicaid to assist with his expenses. He also receives Social Security benefits of $807 per month.

The parties resided in Minnesota in the early years of their marriage, where James worked as a truck driver. He also performed asphalt work for cash. When the parties moved to Iowa, James started a backhoe and septic tank business. Cheryl worked for a large manufacturer after the move to Iowa. Following the move to Iowa, James was self-employed and Cheryl was a W-2 employee. At the time of the dissolution trial, Cheryl had been retired for approximately one year.

During the marriage, Cheryl and James accumulated both personal and real property. Along with the acquisition of assets, they also acquired debt. A substantial amount of that debt was acquired within the last several years of their marriage due to James's declining health.

Cheryl worked full-time while their son was young, which appears to have resulted in James providing care for the parties' son while Cheryl was at work.[1]

---

[1] Both James and the parties' adult son testified to James's child-rearing duties, although the record is lacking specificity on the exact division of child-rearing responsibilities, which is without surprise, given the age of the parties' son at trial. The parties' son testified that when his mother was working fulltime, with respect to his father, "His job was to, honestly, be raising me and to turn the acreage into something livable at that point."

While Cheryl worked outside the home, James maintained his self-employment and made improvements to the parties' acreage, although his self-employment income declined the last twenty years of the marriage. Cheryl also contributed physical labor to improvement of the acreage on nights and weekends when not working outside the home. The parties filed joint tax returns during the marriage.

Following the filing of the dissolution petition, a temporary order was entered requiring Cheryl to pay a portion of James's temporary attorney fees and $100 per month of temporary alimony. Neither party requested an award of alimony at final trial.[2] Following final trial, the district court divided the assets and debts equally between the parties, which resulted in a cash payment from Cheryl to James.[3] Cheryl timely appeals.

III.    Analysis

Cheryl initially argues against the trial court's equal division of the parties' assets and debts due her greater financial contributions to the marriage by way of her employment. Iowa Code section 598.21(5)(c) (2019) requires the court to determine the contribution of each party to the marriage. "Equitable distribution requires the division of 'all of the property owned by the parties at the time of divorce except inherited property and gifts received by one spouse.'" *In re*

---

[2] James's post-trial brief asserts that if the district court were to award James a less than equitable division of the property, a consideration of spousal support to James should be given.

[3] The decree set forth a structured payment schedule for the property settlement owed to James. Cheryl was required to make an initial $3000.00 payment to James with the balance of the settlement to be paid out of sale proceeds from certain assets. If the sale proceeds were insufficient to pay the settlement, Cheryl was required to pay James $1000.00 every three months until the remainder of the settlement was paid in full. If the sale proceeds were greater than the balance of the settlement, the parties were to equally divide the excess.

*Marriage of Naylor*, No. 17-0770, 2018 WL 5850223, at *3 (Iowa Ct. App. Nov. 7, 2018) (citation omitted). Equitable division does not require equal or percentage distribution. *Id.* "In dissolution-of-marriage cases, marital property is to be divided equitably, considering the factors outlined in Iowa Code section 598.21[(5)]." *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013) (alteration in original) (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007)). "An equitable distribution of marital property, based upon the factors in [section] 598.21(5), does not require an equal division of assets." *Id.* at 682 (quoting *In re Marriage of Kimbro*, 826 N.W.2d 696, 703 (Iowa 2013)). "Equality is, however, often most equitable; therefore, we have repeatedly insisted upon the equal or nearly equal division of marital assets." *Id.*

The district court determined the following with respect to the division of assets and debts:

> Even though Cheryl provided the majority of the income to the parties during the marriage, that does not negate other contributions that James might have made during the marriage. Marriage does not come with a ledger. *In re Marriage of Fennelly*, 737 N.W.2d 97, 103 (Iowa 2007). Spouses agree to accept one another "for better or worse." *Id.* at 104. Each person's total contributions to the marriage cannot be reduced to a dollar amount. *Id.* Many contributions are incapable of calculation, such as love, support, and companionship. *Id.* Financial matters must not be emphasized over the other contributions made to a marriage in determining an equitable distribution. *Id.* The parties have been married for 46 years. The parties determined a method of operating which has been in place for many decades. The Court is not able to conclude that James's contribution was less than Cheryl's contribution. The Court is unable to quantify James's tangible and intangible contribution to the marriage. The Court rejects Cheryl's argument to emphasize her financial contribution over James's contribution to the marriage.

While Cheryl's income during the marriage may have been higher, we agree with the trial court's assessment that evidence is lacking that James's contributions to the marriage were less than Cheryl's. Given the length of the marriage and the intangible contributions by James, we find no reason to alter the district court's equal division of the assets, finding such provides equity between Cheryl and James.

We next turn to Cheryl's argument that due to the dissipation of assets by James, Cheryl is entitled to a greater portion of the assets. "A court may generally consider a spouse's dissipation or waste of marital assets prior to dissolution when making a property distribution." *In re Marriage of Kimbro*, 826 N.W.2d 696, 700 (Iowa 2013). Dissipation occurs when a spouse loses or disposes of property otherwise subject to division. *Id.* at 700–01. The doctrine does not apply to monies used for "legitimate household and business expenses." *Id.* at 701.

In support of her argument, Cheryl points to the parties' joint tax returns, citing to business losses and equipment depreciation. However, this argument is undercut by Cheryl's long-term acquiescence on the parties' joint tax returns, indicated by her signature. James's business deductions and depreciations provided the couple tax relief during the marriage, including considerable tax refunds. Further, the parties' operated in this manner for the majority of their marriage, seemingly without objection from Cheryl. The record we have is lacking evidence that the business expenditures were not legitimate business expenses.

Lastly, Cheryl argues that James's assets are limited by his receipt of Medicaid and therefore, he should receive less of the marital assets. Cheryl acknowledges that there is no evidence in the record to support her contention that

because James is receiving Medicaid, his assets are required to be limited. Cheryl invites us to alter the district court decree by arguing, "Because Respondent is receiving Medicaid, he can only have certain assets. While [there is] no evidence to this effect, I believe this Court is aware that considerable time and money is spent by various individuals protecting assets when a spouse goes to a nursing home."

We decline the invitation to invent evidence to support Cheryl's argument. To address the issues under these circumstances, we would be obliged "to assume a partisan role and undertake the appellant's research and advocacy." *See Inghram v. Dairyland Mut. Ins. Co.,* 215 N.W.2d 239, 240 (Iowa 1974).

## IV. Conclusion

Given the length of the parties' marriage, our careful review of the record, and consideration of the required statutory factors and precedent, we find an equal distribution of the assets and debts does equity between the parties. We decline to modify the property division based on Cheryl's arguments concerning contributions to the marriage, dissipation of assets, and a limitation on James's assets due to receipt of Medicaid. Accordingly, we affirm the district court. Costs on appeal, if any, are taxed to Cheryl.

**AFFIRMED.**