# IN THE COURT OF APPEALS OF IOWA

No. 22-0932
Filed August 9, 2023

IN RE THE MARRIAGE OF JEFFREY CECIL JOHANNES
AND JENNY REBECCA JOHANNES

Upon the Petition of
**JEFFREY CECIL JOHANNES,**
    Petitioner-Appellant,

And Concerning
**JENNY REBECCA JOHANNES,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Henry County, John M. Wright,
Judge.

A husband appeals financial aspects of a dissolution decree. **AFFIRMED.**

Katherine S. Sargent of Family Law Solutions of Iowa LLC, Des Moines, for
appellant.

Stephanie L. Kozlowski of Kozlowski Law Group, L.L.C., Burlington, for
appellee.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Jeff and Jenny Johannes divorced after less than five years of marriage. When dividing the parties' property, the district court included the value of a vehicle that Jeff helped his son purchase and Jenny's student loan debt in the marital estate. With the parties' other assets and debts factored in, the court's property division resulted in Jeff receiving a net award of $39,896.19 and Jenny receiving a negative net award of $10,821.27. To equalize the distribution, the court ordered Jeff to pay Jenny $25,358.73.

Jeff appeals, challenging the court's inclusion of the vehicle and Jenny's student loan debt in the marital estate. We affirm on our de novo review of the record. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013) (examining the entire record and adjudicating "anew the issue of the property division").

I.      *Vehicle*

During the marriage, Jeff helped his son from a prior relationship buy a 2009 Chevy Aveo. Jeff cosigned the loan, insured the vehicle, and was on the title, although he testified that his son paid for the vehicle. But while cross-examining Jenny, Jeff's attorney asked her: "Q. . . .  The Chevy Aveo. You would agree with me that Mr. Johannes bought that for his son; correct? A. They bought it together, yes. Q. And that was out of the joint bank account; correct? A. Yes."

After the parties separated, the Aveo was totaled in an accident. Jeff received an insurance check for $5635.15, which he testified that his son used to buy a 2012 Chevy Impala. That vehicle was also titled in both Jeff's and his son's names. Jeff could not remember the purchase price, but he testified "*we* paid . . .

tax, title, license." (Emphasis added.) When pressed on the value of the Impala, Jeff testified "if *we* sold it today it would probably be worth about $3,000." (Emphasis added.)

In its dissolution decree, the district court found the vehicle was marital property and valued it at the amount of the insurance proceeds Jeff received for the wrecked car. Jeff filed a motion under Iowa Rule of Civil Procedure 1.904(2), arguing the court "should not have included the child's vehicle in the marital estate," but if it is included, the court "should have used the $3,000 value." In an amended decree, the court confirmed its decision to treat the vehicle as marital property but reduced its value to $3000. Relying on this court's decision in *In re Marriage of Tunink*, Jeff now argues the vehicle should have been "awarded to [him] at $0 value." *See* No. 21-1194, 2022 WL 3418020, at *3 (Iowa Ct. App. Aug. 17, 2022)

Jeff is correct that the court in *Tunink* found the "most equitable way to address" vehicles the parties purchased for their children to drive "is to award the vehicle to the party involved with purchasing it . . . without any values appearing on that party's side of the ledger." *Id*. But "our decision must ultimately depend on the particular facts relevant to each case." *McDermott*, 827 N.W.2d at 682. Here, those facts, including Jeff's receipt of insurance proceeds for the wrecked vehicle, his name on the title to the new vehicle, and the higher equity value of that vehicle as compared to the ones in *Tunink*, lead us to conclude that the court's decision to value the vehicle at $3000 and include it in the marital estate was

equitable.[1] *See In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007) ("[O]ur courts equitably divide *all of the property owned by the parties at the time of the divorce* except inherited property and gifts received by one spouse." (emphasis added)); *see also In re Marriage of Czarnecki*, No. 20-0855, 2021 WL 5458093, at *3 (Iowa Ct. App. Nov. 23, 2021) (modifying dissolution decree to include the value of the children's vehicles, which were titled in the husband's name, on his side of the ledger); *In re Marriage of Galloway*, No. 02-1010, 2003 WL 1970338, at *2 (Iowa Ct. App. Apr. 30, 2003) (including value of savings accounts titled in the name of a child and his parents in the property division); *cf. In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006) (excluding a car titled in the child's name only from the divisible estate).

## II.    Student Loans

Jenny was employed as a nurse during the parties' marriage, while Jeff worked at a wholesale industrial supplies business. In August 2018, Jenny decided to return to school for her master's degree in nursing education. To help finance her education, Jenny took out student loans, some of which were used for the parties' living expenses and home improvements. She also continued to work as a nurse. Jenny graduated in May 2020, shortly after she and Jeff separated. At the time of trial, Jenny owed $45,568.00 on her student loans, all of which was assigned to her in the district court's property division.

---

[1] We note the court did not include a 2004 Pontiac Aztec that Jeff insured for his other son in the property division because Jeff's name was not on the title to that vehicle.

Jeff claims that the court erred in including the full amount of the student loans as marital debt, arguing that only $17,676 should have been included because that was the amount "available to the parties to pay living expenses." Citing Iowa Code section 598.21(5)(e) and (f) (2020), he contends the court "should have considered [his] contributions to Jenny's education and Jenny's increased earning capacity as a result of those contributions." *See In re Marriage of Francis*, 442 N.W.2d 59, 62 (Iowa 1989) ("[F]uture earning capacity flowing from an advanced degree or professional license is a factor to be considered in the division of property . . . ."). But there was no evidence Jenny's earning capacity increased because of her advanced degree. While Jenny was earning more after the parties separated than she did when they were together, she testified that was because she was working as a traveling nurse, which did not require the use of her master's degree. She explained:

> Because of the pandemic, there was not a lot of opportunity for that, so I had to go where there was employment available.
> Q. Has that enhanced your wages or your rate of pay at all, do you know? A. The—
> Q. The master's? A. No. Actually, it will probably lessen. Because when you work as a floor nurse you can work more hours and make more pay; whereas, when you work as a teacher, you get salary.

In any event, "[d]ebts of the parties normally become debts of the marriage, for which either party may be required to assume the responsibility to pay." *Sullins*, 715 N.W.2d at 251. Though there are cases from this court excluding student loans from the marital estate, those loans were either incurred before the marriage or during the period of separation. *See, e.g.*, *In re Marriage of Hatch*, No. 13-2066, 2014 WL 5862153, at *3 (Iowa Ct. App. Nov. 13, 2014) (collecting

cases). Jenny's student loans were taken out during the marriage with the consent of both parties and used in part for their living expenses. *See In re Marriage of Deol*, No. 09-0909, 2010 WL 2925147, at *2–3 (Iowa Ct. App. July 28, 2010) (holding student loan debt is a shared marital liability when accrued during the marriage relationship, used for family expenses, and incurred with the approval of the non-borrowing spouse); *see also Rogers v. Rogers*, 12 So. 3d 288, 291 (Fla. Dist. Ct. App. 2009) ("As a general proposition, student loan debt incurred during the marriage is a marital liability."). We conclude the district court's decision to include the full amount of what Jenny still owed in student loans was equitable. *See In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998) (stating that in considering the economic provisions in a dissolution decree, we will disturb a district court's "ruling 'only when there has been a failure to do equity'" (citation omitted)).

For these reasons, the court's dissolution decree is affirmed.

**AFFIRMED.**