# IN THE COURT OF APPEALS OF IOWA

No. 22-0697
Filed August 9, 2023

**IN RE THE MARRIAGE OF THOMAS COLBY
AND KIMBERLY R. COLBY**

**Upon the Petition of
THOMAS COLBY,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
KIMBERLY R. COLBY n/k/a KIMBERLY R. CISNA,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Randy V. Hefner,

Judge.


        A husband appeals, and his wife cross-appeals, the spousal-support

provisions of a dissolution-of-marriage decree.  **AFFIRMED ON BOTH APPEALS**

**AND REMANDED WITH DIRECTIONS.**


        Matthew J. Hemphill of Bergkamp, Hemphill & McClure, P.C., Adel, for

appellant/cross-appellee.

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee/cross-appellant.


        Considered by Ahlers, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Thomas Colby appeals, and Kimberly Cisna cross-appeals, from the district court's award of spousal support to Kimberly.  Thomas is unhappy with the amount and length of the award, claiming it is too much for too long, while Kimberly thinks it is too short.  We affirm, finding no inequity in the court's award of $2500 per month for thirty-six months.

**I.      Background Facts and Proceedings**

Thomas Colby and Kimberly Cisna married in 2014, after dating for four years.  Thomas was sixty years old and Kimberly was fifty-two.  It was the third marriage for both, and they had adult children from those prior marriages.  Before getting married, they signed a premarital agreement that addressed ownership and division of their property.

Kimberly was unemployed when the parties started dating in 2010, after her marketing position at a corporation was eliminated.  For a few years, Kimberly flipped houses with Thomas's help.  He was the owner of a home-building business with his brother.  In 2012, Kimberly's sister was diagnosed with cancer, so she remained unemployed to help take care of her.  After her sister passed away, Kimberly helped Thomas keep books for a new company they started together to build custom homes.  In early 2016, Kimberly and a business partner started a company called Seniors on the Move, which was geared toward helping "metro area seniors stay educated on things that they need to know as their lifestyle changes, keep them active, engaged."  The business was slow to get off the ground, with Kimberly's business partner passing away in October 2016 and the COVID-19 pandemic in 2020.  Kimberly did not pay herself a salary at first.  She

said that Thomas was not concerned, telling her that he would "always take care of" her. Thomas was able to do that with his income from the homebuilding business, plus what he received as a beneficiary of several family trusts.

In 2020, Thomas petitioned to dissolve their marriage. He had retired from homebuilding by then but was still receiving income from the trusts, as well as social security retirement benefits and disbursements from a company he invested in. Following a trial, the district court divided the marital property according to the premarital agreement. This resulted in Thomas receiving a home the parties built during the marriage, valued at $1,054,500, with a payout of $70,904 to Kimberly for her share of equity in the home as calculated under a formula in the premarital agreement. The court also awarded Kimberly what it characterized as transitional spousal support of $2500 per month for thirty-six months and $12,500 in trial attorney fees. Thomas appeals, and Kimberly cross-appeals, from the court's spousal-support award. Kimberly also seeks an unspecified amount of attorney fees on appeal.

## II.    Standard of Review

We review spousal-support awards de novo. *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023). Despite this de novo review, our supreme court has cautioned against "undue tinkering" because of the institutional deference afforded to the district court in making these "important, but often conjectural, judgment calls." *Id.* (citation omitted). As a result, we will disturb the court's spousal support award "only when there has been a failure to do equity." *Id.* (citation omitted).

**III. Analysis**

On appeal, Thomas challenges the amount and duration of the spousal support awarded by the district court. Though he concedes in his appellate brief that some sort of an award is appropriate, he asks that we reduce it to $1000 per month for twelve months. For her part, Kimberly asks us to extend the spousal support award to eighty-four months at a rate of $2500 per month.

Spousal support awards turn on the specific facts and circumstances of each case. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020). In considering those circumstances, we are guided by the factors in Iowa Code section 598.21A(1) (2020). Through the application of this statutory criteria, Iowa courts historically recognized three types of spousal support—rehabilitative, reimbursement, and traditional. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 539 (Iowa 2022). But, just one week before the district court entered its dissolution decree in this case, our supreme court formally recognized a fourth type— transitional spousal support. *Id.* at 541. The court in *Pazhoor* described that type of support as

> appropriate when a party capable of self-support nevertheless needs short-term financial assistance to transition from married to single life. Transitional [spousal support] is not needed when the recipient has sufficient income or liquid assets to facilitate the change to single life. We decline to require a showing of undue hardship and instead rely on district courts to do equity when awarding transitional [spousal support] to "bridge the gap" from married to single life.

*Id.* at 545. This type of support, according to the court in *Pazhoor*, "can ameliorate inequity unaddressed by the other recognized categories of support. Divorcing spouses must adjust to single life. If one is better equipped for that adjustment

and the other will face hardship, then transitional [support] can be awarded to address that inequity and bridge the gap." *Id.* at 542.

The district court relied on *Pazhoor* in concluding that Kimberly should receive transitional spousal support, after finding her claim did "not fit neatly into any of the other three categories." The court reasoned:

> Kimberly may be marginally capable of self-support, but she nevertheless needs short-term financial assistance to transition from married to single life. This support will be ordered to alleviate the financial hardship Kimberly is experiencing while transitioning to single life and while she establishes a permanent means of self-support. Specifically, this spousal support should assist Kimberly as she continues to build her new business or, if that does not happen, while she finds gainful employment after years of being out of the job market.

While the parties' appeal from this ruling was pending, the supreme court decided *Sokol*, clarifying the contours of transitional support and distinguishing it from rehabilitative:

> Transitional spousal support and rehabilitative spousal support are separate and distinct and serve different purposes. Transitional spousal support addresses short-term liquidity needs associated with splitting one household into two; whereas rehabilitative spousal support addresses training, education, work-readiness, and human capital development.

985 N.W.2d at 187 (internal citations omitted).

The district court described its spousal-support award as transitional after finding that "rehabilitative spousal support is not warranted because Kimberly requires no additional education or training to become self-sufficient." But we think rehabilitative support, or a hybrid of rehabilitative and transitional, is exactly what's warranted. *See id.*; *see also In re Marriage of Strickler*, No. 22-0011, 2023 WL 2670278, at *4 (Iowa Ct. App. Mar. 29, 2023) (determining a hybrid award of

traditional and rehabilitative support was needed where the recipient spouse was educated but "needed time to develop the professional relationship, the human capital, necessary for her new career to develop to the goal of self-sufficiency"). And we find that is the type of support awarded by the district court, despite its label otherwise. *See, e.g.*, *In re Marriage of Smith*, 573 N.W.2d 924, 927 (Iowa 1998) ("Whether described as transitional or rehabilitative, the [spousal support] awarded here reflects the disparity in the parties' relative needs and earning capacities upon the dissolution of their marriage.").

As quoted above, the district court's stated purpose for Kimberly's spousal support award was to assist her "as she continues to build her new business or, if that does not happen, while she finds gainful employment after years of being out of the job market." That is strikingly similar to the purpose of the rehabilitative spousal support awarded in *Sokol*, where the wife was a doctor earning $440,000 per year. 985 N.W.2d at 181. Her husband owned a home repair and remodeling business that he started in 2013. *Id.* Though the company "grew over the years and had approximately $553,000 in revenue in 2020," the husband "had never paid himself a salary from the company." *Id.* "Based on the company financials, the district court imputed to him annual income of $50,000." *Id.* After awarding "each party net assets of approximately $660,000," the court ordered the wife to pay her husband $3000 per month in rehabilitative spousal support for four years to give him "time to build a more 'concrete, realistic business model' and 'improve his earning capacity.'" *Id.* at 182. The supreme court affirmed that award, reasoning what the husband "needed was sufficient time to improve his skills and retool his business plan to increase his income. That is what the district court's well-

reasoned rehabilitative spousal support award was shaped to do." *Id.* at 187. The same is true here.

While Kimberly has a bachelor's degree in marketing and public relations from 1986, she has not been employed in that field since 2010. *See* Iowa Code § 598.21A(1)(d) (educational level), (e) (earning capacity and length of absence from job market). She questioned her ability to return to that profession, testifying: "There are things that I probably don't know that have changed a lot in the past ten-plus years, you know, social media, the different kinds of marketing that's done now that wasn't done ten years ago." And she realistically doubted the possibility "that someone is going to hire [her] when [she's] almost 60 years old and . . . out of the corporate world for over a decade." *See id.* § 598.21A(1)(b) (age of the parties). But she was committed to the business that she started in early 2016— Seniors on the Move. That business was just starting to take off, after surviving the loss of Kimberly's business partner and the COVID-19 pandemic. Though Kimberly did not pay herself anything at first, by trial she was taking a $2900 draw each month. She testified:

> I'm trying to grow the business and hopefully eventually franchise it some day. . . . We've got, had an increase of 50 or 60 more members, just got four more new affiliates in this past month, you know, so it's growing. It's really growing and I am sure it's going to take off.

The three years of spousal support awarded to Kimberly by the district court will give her the time she needs to keep growing her business and become self-supporting. *See In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989) ("[S]elf-sufficiency is the goal of rehabilitative [spousal support]."); *see also* Iowa Code § 598.21A(1)(f) (feasibility of the party seeking maintenance "becoming self-

supporting at a standard of living reasonably comparable to that enjoyed during the marriage"). Though the parties weren't married as long as the couple in *Sokol*, the supreme court has affirmed awards of a similar duration in shorter marriages. *See, e.g.*, *Smith*, 573 N.W.2d at 927 (affirming spousal support award of $300 per month for three years after a four-year marriage); *see also* Iowa Code § 598.21A(1)(a) (length of marriage). And while Kimberly did receive temporary spousal support totaling $19,000, as Thomas points out on appeal, the dissolution was pending for two years. *Cf. In re Marriage of Mills*, 983 N.W.2d 61, 73 (Iowa 2022) ("Generally, transitional support can be addressed through the issuance of orders on temporary matters while the dissolution is pending.").

During that time, Thomas stayed in the marital home valued at $1,054,000, while Kimberly lived in her sister's basement before moving into a one-bedroom apartment. *See In re Marriage of Schenkelberg*, 824 N.W.2d 481, 487 (Iowa 2012) (stating that even where there is a premarital agreement governing property distribution, "it is proper to look at the assets each party received" in calculating spousal support). Because the temporary amount that she received was not enough to close the gap between her income and monthly expenses,[1] Kimberly had to incur a good deal of debt on her credit cards. She also had to borrow money from her company, and she cashed in a life insurance policy and retirement account. So while she received a payment of $70,904 for her equity in the home

---

[1] Kimberly's monthly expenses totaled $3597 at the time of trial. That amount included $1475 in rent, $492 in health insurance, $175 on prescriptions not covered by insurance, and $600 on a payment plan for federal and state taxes due from capital gains incurred by the 2020 sale of her premarital home—a sale that netted her just $1147.16.

under the parties' premarital agreement, that money was not going to get her far after the divorce. *Cf. In re Marriage of Becker*, 756 N.W.2d 822, 856 (Iowa 2008) (considering the "substantial income" spousal support payee could earn from a $3.3 million dollar property settlement in assessing her need for spousal support).

In contrast, the district court found Thomas's "financial future is secure." Although he is retired from his homebuilding business, he "regularly receives income from various family trusts, investments, social security retirement benefits, and income from a recently established business called Vision One." The court found Thomas's income from the trusts alone totaled "approximately $170,000" per year, with Kimberly's expert witness estimating his "average annual income from all sources for the years 2017–2020 at $305,983." Thomas does not challenge the court's finding that "[h]owever calculated or estimated, [he] has substantial ability to pay reasonable spousal support." *See In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007) (considering the comparative income of the parties in affirming spousal support award of $500 per month for ten years).

In all, the record shows that Kimberly needs "assistance in the short-term to become self-sustaining in the long-term." *In re Marriage of Hulett*, No. 00-1312, 2001 WL 1658840, at *3 (Iowa Ct. App. Dec. 28, 2001) (affirming spousal support award of $500 per month for seventy-two months); *accord In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *17 (Iowa Ct. App. Oct. 10, 2018) (McDonald, J., concurring specially) ("The critical consideration [for rehabilitative support] is the expectation the recipient spouse will have lower earnings for a limited time while investing in his or her human capital to increase future earnings."). There was thus no failure to do equity with the court's limited

spousal-support award designed to help Kimberly achieve that goal. *See Sokol*, 985 N.W.2d at 188 (Mansfield, J., concurring in part and dissenting in part) (noting that "[u]nless and until our state adopts formal alimony guidelines, appellate courts should not be second-guessing lower courts' judgment calls" in the absence of a failure to do equity).

For these reasons, we affirm the district court's spousal support award in its entirety. With that outcome, and the substantial difference in the parties' income, we also grant Kimberly's request for appellate attorney fees. *See In re Marriage of Heiar*, 954 N.W.2d 464, 473 (Iowa Ct. App. 2020) (considering "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal"). Because Kimberly did not file an attorney fee affidavit or other documentation supporting her request, we remand to the district court to determine a reasonable award and enter judgment for the same. *See id.*

**AFFIRMED ON BOTH APPEALS AND REMANDED WITH DIRECTIONS.**

Buller, J., concurring specially; Ahlers, P.J., partially dissenting.

**BULLER, Judge** (concurring specially).

Within the landscape shaped by recent and historical supreme court precedent, this is a tough case. Each of my colleagues' opinions, for the court and in partial dissent respectively, make good points and credibly rely on legal authorities that support their claims. Tasked with choosing to disturb a district court's spousal-support award or affirm outright, I concur in Judge Badding's opinion for the court and would affirm. *See In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023) ("An appellate court should disturb the district court's determination of spousal support 'only when there has been a failure to do equity.'" (citation omitted)).

That said, I would not come to this conclusion if I were writing alone or on a blank slate. Left to my own devices, and without the confusion that goes with attempting to label the type of spousal-support award at issue, I would likely affirm the award as modified, at $2500 per month for twenty-four months. While I agree with Judge Badding's opinion that it would be inequitable to reduce the duration of the award to twelve months, I also find that Kimberly's business is off to a good start and equity does not require thirty-six months of rehabilitative support. If forced to label the district court's award, I would find it a hybrid of rehabilitative and transitional spousal support, even if the district court felt otherwise (in ruling without the benefit of *Sokol*). But, given the procedural posture of the case and the existing guidance in the case law, I join in the court's opinion to affirm the judgment in whole.

I write separately in part to express my view that the current spousal-support-award case law is not working. The factors are so malleable, and the

guardrails for appellate review so thin, that it renders appellate decision-making over spousal-support awards a black box—a gamble worth taking for unsatisfied litigants. In my view, our appellate courts should not sit as a super-court of equity, which at our level amounts to a triumvirate of judges conducting de novo equitable review and potentially substituting their judgment for that of a district court judge who observed the parties through trial. Our appellate courts are intended to exercise appellate jurisdiction and correct errors at law, not re-try cases to give litigants another bite at the apple before a new audience. *See* Iowa Code § 602.5103(1) (jurisdiction of the court of appeals); *accord* Iowa Const. art. V, § 4 (jurisdiction of the supreme court).

These concerns are also reflected in two other recent fragmented decisions from our court. *See In re Marriage of Sommerville*, No. 21-1672, 2023 WL 4521540, at *7–8 (Iowa Ct. App. July 13, 2023) (Schumacher, J., partially dissenting) (dissenting over spousal support in light of "recent supreme court cases and a change in the tax laws"); *In re Marriage of Bainbridge*, No. 22-1299, 2023 WL 2908648, at *4–5 (Iowa Ct. App. Apr. 12, 2023) (Badding, J., specially concurring) (noting difficulties in applying the statutory factors and ambiguity about the type or types of spousal support awarded).

Solutions to problems with reviewing spousal-support awards can come from either the judicial or legislative departments. I would welcome clarification or refinement of the appellate courts' role by case law or statute. I also believe it may be time for the supreme court to revisit the concept of spousal-support guidelines, to eliminate uncertainty and provide a common starting point for analysis (as has occurred through promulgation of child-support guidelines).

I join in the court's opinion affirming the district court, subject to these reservations.

**AHLERS, Presiding Judge** (concurring in part and dissenting in part).

I concur in the decision to deny Kimberly's cross-appeal. I also share many of the frustrations expressed in the special concurrence. I write separately to dissent from the decision to affirm the spousal-support award granted by the district court and the decision to award Kimberly appellate attorney fees.

There is no dispute that Iowa now recognizes four types of spousal support—traditional, reimbursement, rehabilitative, and transitional—each of which has a different goal. *See In re Marriage of Sokol*, 985 N.W.2d 177, 185 (Iowa 2023). There is also no dispute that the categories of spousal support are not mutually exclusive, so courts may issue hybrid awards designed to satisfy the goals of more than one category. *Id.* However, the fact the categories are not mutually exclusive does not give courts freedom "to award spousal support not corresponding to any recognized category of support." *Id.* at 186. While the four categories of spousal support are not mutually exclusive, "they are the exclusive categories of spousal support our precedents have recognized as equitable." *Id.* This is where the rub comes in that causes me to part company with the majority— the majority sees a case for rehabilitative spousal support and I don't.

In deciding to what extent spousal support is warranted here, we are all in agreement with the district court that traditional and reimbursement support are not warranted. That leaves only rehabilitative or transitional spousal support—or a hybrid of the two—as options. The district court found that rehabilitative support is not warranted, but it found transitional spousal support of $2500 per month for three years to be appropriate. As I read the majority opinion, the majority affirms

the award, not because it is a justified amount of transitional spousal support, but because the majority concludes it is an equitable amount of rehabilitative support.

I cannot get on board with the majority's decision that the facts here justify rehabilitative support or that this case is similar to *Sokol*. Rehabilitative support comes into play when there is an economically dependent spouse that needs a period of re-education or retraining to create incentive and opportunity to become self-supporting. *Id.* at 185. But there's no economic dependence, re-education, or retraining here. Unlike the nearly twenty-year marriage with a huge disparity in the parties' incomes in *Sokol, id.* at 181, this is a seven-and-one-half-year marriage with a much more modest discrepancy in earnings. Kimberly came into the marriage at age fifty-two with no steady source of income. One year and five months into the marriage she started a business. At the time of the dissolution trial six years later, the business was providing a monthly draw to Kimberly of $2900, and, by her own admission, the business was growing on a monthly basis and she was "sure it's going to take off." In contrast, the recipient spouse's business in *Sokol* had never generated a salary for him by the time of the dissolution trial. *Id.* The facts justifying an award of rehabilitative support in *Sokol* aren't present here. Kimberly is not economically dependent, and she is not seeking nor does she need reeducation or retraining to become self-supporting. As a result, I cannot join the majority in concluding rehabilitative support is warranted. *See id.* at 186 ("Without a showing that the recipient spouse seeks reeducation, retraining, or some discrete period of time to increase earning capacity to become self-supporting, rehabilitative spousal support is inappropriate.").

Having concluded that rehabilitative support is not warranted, that leaves only transitional support as a possible basis for a spousal-support award. I agree with the district court that transitional support is warranted here. The issue then becomes amount and duration. In assessing the proper amount and duration of transitional support, *Sokol* is instructive. I note that *Sokol* was decided after the district court issued its ruling and the parties submitted their appellate briefs, so neither the district court nor the parties had the benefit of *Sokol* to guide them in their efforts. In *Sokol*, our supreme court reminded us that the purpose of transitional spousal support is to address "short-term liquidity needs associated with splitting one household into two." *Id.* at 187. As transitional spousal support is a liquidity stop-gap measure, it "generally should not exceed one year in duration." *Id.*

In assessing the appropriate amount and duration of transitional support here, I have some concern about the amount awarded. I find the amount on the extreme high end of an equitable range, but, as it is still within an equitable range, I would not tinker with it. *See id.* at 182 (pointing to "institutional deference afforded the district court" in discouraging "undue tinkering with spousal support awards"). I cannot say the same with respect to duration. As noted, *Sokol* makes clear, given the stop-gap nature of transitional spousal support, it "generally should not exceed one year in duration." *Id.* at 187. While I do not read this statement in *Sokol* as a categorical prohibition on transitional spousal support exceeding one year in duration, it does signal that one year is the longest that transitional support should be imposed absent compelling reasons justifying a slightly longer duration.

Here, one year would be a sufficient duration as there are no compelling reasons justifying a longer duration. It took nearly two years for this case to get to trial following the filing of the petition, during which time Kimberly's business continued to grow. Kimberly had this nearly two-year period to reestablish her financial footing to transition from married to single life, and that reestablishment was aided by temporary support she received while the case was pending. Additionally, she received property division funds that should have helped alleviate any short-term liquidity problems she had with her transition. On the other hand, Thomas received the benefit of staying in the marital home while Kimberly was required to reestablish herself and set up a new residence, which requires significant financial expenditures. Given these details, considered in light of the couple's standard of living during the marriage, I conclude that transitional spousal support of $2500 per month for twelve months is equitable. Therefore, I would affirm the district court's decision to order Thomas to pay $2500 per month of transitional spousal support, but I would modify the court's decree to reduce the duration of such spousal support to twelve months. I would also decline to award Kimberly appellate attorney fees.

For these reasons, I concur in affirming on Kimberly's cross-appeal, but I respectfully dissent from the decision to affirm on Thomas's appeal and from the decision to award Kimberly appellate attorney fees.